UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CYNTHIA SHELTON CLAYBORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:10CV1010 TIA |
| | ) |
| OFFICER DENNIS STRUEBING, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants City of Chesterfield Police Officers Dennis Struebing and Stephen Aspinall's Joint Motion for Summary Judgment. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Background**

On January 30, 2010, Plaintiff was a patron at the Chesterfield Mall located in Chesterfield, Missouri. (Defs.' Statement of Uncontroverted Material Facts ["SUMF"] ¶ 5, ECF No. 33-1) While there, she visited the food court and made a purchase at the "andy W.O.W!" restaurant. (Id. at ¶ 6) After making this purchase, an "andy W.O.W!" employee called the police and reported that a counterfeit $100 bill had been passed at the restaurant. (Id. at ¶ 7) Chesterfield Police Officers Struebing and Aspinall were dispatched to the mall to investigate, and upon arrival, an "andy W.O.W!" employee informed the officers that the person who passed the counterfeit bill was still in the mall and being followed by mall security officers. (Id. at ¶¶ 8-9) Mall security officers directed the Defendant Police Officers to Plaintiff, who denied passing the bill. (Id. at ¶ 10) Plaintiff first informed Officer Struebing that she paid with a $20 bill then stated she paid with a $10 bill and three $1 bills. (Id. at ¶ 11; Pl.'s Additional Facts ¶ 52, ECF No. 35)

The Defendant Officers arrested Plaintiff and transported her to the Chesterfield Police Department, where United States Secret Service Agent Kevin Koch interviewed Plaintiff. (Def. SUMF ¶ 12, ECF No. 33-1) She drafted a 5-page handwritten statement regarding the events at the mall, stating that she entered the mall at 5:30 p.m. with her sister and her two young sons. (Id.) After shopping she stopped at "andy W.O.W!" and ordered 2 meals totaling $12.85 and paid with a $10 bill and three $1 bills. (Id.) She further stated that when approached by a police officer, she stated that a mistake must have occurred but then discovered that she had thrown away her receipt. (Id. at ¶ 13) The statement further explained that the officers watched her search through the trash for her receipt. (Id.) The receipt found in the trash indicated that Plaintiff had not used $20 but used $13 instead. (Id. at ¶ 19) However, both Defendant Officers testified that Plaintiff initially told them she paid with a $20 bill, then later changed her story. (Id. at ¶¶ 14-15)

In addition, a witness who was employed at "andy W.O.W!" positively identified Plaintiff as the person who passed the counterfeit $100 bill. (Id. at ¶¶ 16-17, 21) Witness Jennifer Cordes' written statement dated January 31, 2010 indicated that the Plaintiff ordered two kids meals, asked if the restaurant "could break a hundred", and paid with a suspicious $100 bill. (Id. at ¶ 17) After retrieving a receipt from the food court trash bin, Officer Struebing returned to "andy W.O.W.!" to speak with Ms. Cordes. (Id. at ¶ 21) She advised that Plaintiff had passed the counterfeit bill at 4:43 p.m. and that Plaintiff's companion made a separate purchase with $13 at 5:12 p.m. (Id.) Witness Cordes then called the authorities at 5:40 p.m. (Investigative Report, Def.'s Ex. A at 1, ECF No. 33-2) Another "andy W.O.W.!" employee, Erica Morgan, told the officers that Plaintiff handed her the counterfeit bill and that Ms. Morgan went ahead with the transaction because the line marked with the counterfeit pen stayed yellow for a time before turning brown. (Id. at 6) Officer Struebing seized

2

the reprints of the two transaction receipts. (Id. at 7)

Defendant Officers arrested Plaintiff after these positive identifications and did not view any surveillance video recording on or before January 30, 2010. (SUMF at ¶¶ 25-26, 28) The officers were unaware of specific locations in the Chesterfield Mall that were under video surveillance or what available video would be relevant to the investigation of the criminal complaint against Plaintiff. (Aff. of Police Officer Dennis Struebing ¶¶ 13, 15, ECF No. 33-8; Aff. of Police Officer Stephen Aspinall ¶¶ 11, 13, ECF No. 33-9) Plaintiff was indicted for passing the counterfeit note, among other things, but the charges were later dropped. (Pl.'s Additional Facts ¶¶ 82-83)

On June 2, 2010, Plaintiff filed a Complaint against Defendant police officers under 42 U.S.C. § 1983, alleging that the officers violated her Fourth Amendment right to be free from arrest without probable cause. Specifically, Plaintiff alleges that the investigative detention lasted for more than a reasonable time and that the officers lacked probable cause to arrest her. As a result, Plaintiff asserts that she suffered physical and mental damages. She seeks compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. § 1988.

## **Legal Standards**

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court show "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The court must view the evidence and all reasonable inferences in the light most favorable to the non-moving party. Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).

The moving party has the initial burden to establish the non-existence of any genuine issue of

fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ .P. 56(e). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In fact, the non-moving party must present sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for that party. Anderson, 477 U.S. at 249; Celotex, 477 U.S. at 324. Self-serving, conclusory, statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment. O'Bryan v. KTIV Television, 64 F.3d 1188, 1191 (8th Cir. 1995).

## Discussion

Defendants first argue that they are entitled to summary judgment under the doctrine of qualified immunity because the warrantless arrest was supported by probable cause. Plaintiff, on the other hand, asserts that the officers are not entitled to qualified immunity because they conducted an unreasonable investigation and, even if the investigation were reasonable, they had no probable cause for the arrest. The undersigned finds that the Defendants are entitled to qualified immunity such that summary judgment is warranted.

"Qualified immunity protects governmental officials from liability for civil damages if they

4

have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This immunity permits "'officers to make reasonable errors,' Habiger v. City of Fargo et al., 80 F.3d 289, 295 (8th Cir. 1996), and provides 'ample room for mistaken judgments.' Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)." Borgman v. Kedley, 646 F.3d 518, 522 (8th Cir. 2011). In addition, "[t]he defense protects public officials unless they are 'plainly incompetent' or 'knowingly violate the law.'" Id. (quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991)). To determine whether government officials are entitled to qualified immunity, courts consider two factors: "(1) whether the facts alleged, construed in the light most favorable to [the plaintiff], establish a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that her actions were unlawful." Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011). The courts have discretion to decide which of the two prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). "Although qualified immunity is an affirmative defense, the burden is on the plaintiff to plead, *and*, if presented with a properly supported motion for summary judgment, to present evidence from which a reasonable jury could find that the defendant officer has violated the plaintiff's constitutional rights." Moore v. Indehar, 514 F.3d 756, 764 (8th Cir. 2008) (citations omitted).

The Fourth Amendment clearly establishes the right of citizens not to be arrested without probable cause. Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999). However, "[a] warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman, 646 F.3d at

5

522-23 (quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)).

Here, the Defendant Officers had at least arguable probable cause to arrest Plaintiff without a warrant and are thus entitled to qualified immunity. "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Id. at 523 (quoting Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010)). Further, arguable probable cause exists when an officer mistakenly makes an arrest under the belief that he or she has probable cause if such mistake is objectively reasonable. Id. (citation omitted). "'As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable cause analysis for an arrest.'" Fisher, 619 F.3d at 816 (quoting Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008)).

The facts of record show that two witnesses positively identified Plaintiff as the person who passed the counterfeit $100 bill. In addition, the witnesses demonstrated a high level of certainty and made the identifications within a short period of time after the crime. Officers are entitled to rely on the truthfulness of information that a victim of a crime provides. Peterson v. City of Plymouth, 60 F.3d 469, 474-75 (8th Cir. 1995) (citation omitted)); see also Borgman, 646 F.3d at 523 (finding officer was entitled to rely on information from witness security guard). Further, the officers had the receipts from two transactions that supported the witnesses' accounts.

The Plaintiff's reliance on Kuehl v. Burtis, 173 F.3d 646 (8th Cir. 1999) is misplaced. There, the officers did not have probable cause because the officer had spoken with the suspect for a mere 20 seconds, ignored exculpatory evidence, and disregarded an eye witness account. Kuehl, 173 F.3d at 648, 651; Borgman 646 F.3d at 523. In the instant case, the officers spoke with Plaintiff and

6

allowed her to dig through the trash and present an alibi. However, two witnesses positively identified Plaintiff as the person passing the counterfeit bill. While Plaintiff contends that the officers should have viewed security video prior to making the arrest, "[i]n considering information given by a victim of a crime, an officer need not conduct a mini trial before effectuating an arrest although he cannot avoid minimal further investigation if it would have exonerated the suspect." Borgman, 646 F.3d at 523 (citation omitted).

Here, the officers did conduct minimal further investigation, which revealed inconsistencies between Plaintiff's story and the identification by two witnesses. Officers may weigh the credibility of witnesses in making a credibility determination. Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259 (10th Cir. 1998). Further, "'as long as a reasonably credible witness or victim informs the police that someone has committed a crime . . . the officers have probable cause.'" Matthews v. City of East St. Louis, 675 F.3d 703, 706 (7th Cir. 2012) (quoting Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999) (internal quotation omitted)).

In addition, Plaintiff has failed to identify "plainly exculpatory evidence" as was present in the Kuehl case. Plaintiff merely presents conflicting evidence and baldly contends that the video would have exonerated her. Plaintiff's memorandum in opposition contains five pages containing questions that, in hindsight, the officers could have asked and further investigated. However, once probable cause is established, the officers are not constitutionally required to conduct further investigation hoping to uncover potentially exculpatory evidence. Id. at 707 (citations omitted). Further, as previously stated, whether probable cause exists is determined at the time of the arrest, and facts developed later are irrelevant. Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009) (citation omitted). Here, the officers evaluated the conflicting versions of the events and properly

7

made a probable cause determination. Joseph v. Allen, No. 4:10CV1521 JAR, 2012 WL 1684565 at *5 (E.D. Mo. May 15, 2012); see also Royster v. Nichols, 698 F.3d 681, 688 (8th Cir. 2012) (stating that, in evaluating whether probable cause exists for arrest, courts determine from the totality of circumstances whether a prudent person would believe the plaintiff committed a crime, giving the officer substantial latitude in interpreting and drawing inferences from the factual circumstances) (quotation and citation omitted).

With regard to the video tape, Plaintiff acknowledges the police report, which indicates that Officer Struebing viewed a disc showing Plaintiff at the counter near the beginning of the tape but that the video was unclear for the second transaction. Even if the Defendant Officers had viewed the tape before Plaintiff's arrest, there still would have been probable cause, as the tape does not undermine the positive identification from two witnesses or eliminate discrepancies in Plaintiff's version of the facts. Flynn v. Brown, 395 F.3d 842, 844 (8th Cir. 2005).

Because Plaintiff has failed to demonstrate that the Defendant Officers' actions violated her constitutional rights, she cannot deprive them of qualified immunity.[1] Stepnes v. Ritschel, 663 F.3d 952, 963 (8th Cir. 2011) (citation omitted). The undersigned finds that the totality of the circumstances indicates that a prudent person would believe that Plaintiff had committed a crime. Amrine .v Brooks, 522 F.3d 823, 832 (8th Cir. 2008) (citations omitted). Thus, summary judgment is proper in this case.

---

[1] The Court concludes that the Defendant Officers' arrest of Plaintiff did not violate her constitutional rights and therefore need not reach the issue of whether the right was clearly established at the time of her arrest. Lykken v. Brady, 622 F.3d 925, 931 (8th Cir. 2010).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants City of Chesterfield Police Officers Dennis Struebing and Stephen Aspinall's Joint Motion for Summary Judgment (Doc. No. 32) is **GRANTED**.

/s/ Terry I. Adelman
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of January, 2013.